**CHICAGO TITLE INSURANCE CO., Plaintiff,**

v.

**Samuel Segui SOTOMAYOR, et al., Defendants.**

**Civ. No. 99–1993(JP).**

United States District Court, D. Puerto Rico.

July 12, 2005.

Charles P. Gilmore, O'Neill & Gilmore, Humberto Guzman–Rodriguez, Lizzie M. Portela–Fernandez, Lizzie Portela Law Office, Roberto Santana–Aparicio, Del Toro & Santana, San Juan, PR, for Plaintiff.

Roberto Reyes–Lopez, Roberto Reyes Lopez Law Office, Elfren A. Colon–Rodriguez, Rafael A. Lugo–Guzman, PR Economic Development Bank Legal Department, Gabriel A. Penagaricano, Ramon Coto–Ojeda, Cotto Malley & Tamargo, LLP, Felix J. Montanez–Miranda, Victor P. Miranda–Corrada, Enrique Velez–Rod-

riguez, Miriam R. Ramos–Grateroles, San Juan, PR, Candida R. Negron–Ramos, Aibonito, PR, for Defendants.

Hector Ernesto Pedro Claveria–Guevara, San Juan, PR, pro se.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION AND FACTUAL BACKGROUND

The Court has before it Plaintiff Chicago Title Insurance's motion for summary judgment (**docket No. 207**), Co–Defendant Economic Development Bank of Puerto Rico's (hereinafter "the EDB") opposition thereto (docket No. 219), and Co–Defendant Samuel Seguí Sotomayor's and Ivonne Lee Hernández Cabán's (hereinafter collectively "Seguí") opposition thereto and cross motion for summary judgment (**docket No. 249**). The Court also has before it Co–Defendant EDB's motions to dismiss (**docket Nos. 173, 199, and 238**) and Co–Defendants Juan Manuel Díaz Rivera and Migdalia Millet Ocasio's (hereinafter collectively "Díaz–Millet") motions to dismiss (**docket Nos. 185, 236**).

On June 1, 1990, José Facundo Calafelt and his wife Marian Geigel Cruet constituted a mortgage over a property they had acquired at Urbanización Paseo Alto. The mortgage was for $300,000 and for the benefit of H.F., Inc., a non-party in this case. Plaintiff Chicago Title insured the $300,000 mortgage under a policy which insured its rank and amount. The mortgage deed was prepared by and subscribed before and by notary public and co-Defendant Samuel Seguí Sotomayor. The deed was presented at the Registry of the Property, San Juan Part, by an H.F. employee on June 7, 1990.

On May 22, 1992, almost two years later, the Registrar of Property notified an error in the mortgage deed as to the area of the real property. The area of the real property according to the records of the Registry of Property was 1432.80 square meters, not 1413.44 meters as it appeared in the mortgage deed as prepared by Co–Defendant Seguí. Pursuant to the mortgage law, a defect in a document filed with the Registry of the Property has to be corrected within 60 days of the notice by the Registrar. Otherwise, the presentation entry ("asiento de presentación") expires ("caduca") and the effect is that the mortgage will be deemed never to have been presented, and thus not recorded. In the case at bar, the mortgage deed which secured the payment of the $300,000 mortgage loan was not corrected within the time frame allotted by the law, and was therefore deemed to have never been recorded.

Between June 1 and 12, 1990, barely three days after its presentation at the Registry, Citibank, N.A. acquired the insured mortgage from H.F. Since the error in the deed was not corrected, Plaintiff was left with an unsecured mortgage for which it had to respond in the amount of $227,379.32.

On June 1, 1996, Calafelt sold the Paseo Alto property to co-Defendant Héctor Ernesto Clavería. In the papers he signed, Clavería expressly assumed the payment of the existing mortgage in favor of Citibank. Clavería then subscribed three different mortgage deeds secured by the Paseo Alto property. The first two were for $125,000 and $60,000, respectively, and were for the benefit of Juan Díaz and Migdalia Millet, and the remaining one for $635,000 was in favor of the EDB. In all mortgage deeds, specific references were made to the existing mortgage in favor of Citibank, and the same was acknowledged by all parties. The EDB, through a subordination clause in its own mortgage deed with Clavería, expressly recognized the ex-

istence of the Citibank mortgage loan and agreed to enter in second rank to that of Citibank. According to Plaintiffs, the status of the matter at this juncture was: Citibank holding the first lien on the property, and the EDB holding the second lien. The EDB expressly noted in its paperwork that the deed for the Citibank mortgage had not yet been presented to the Registry, despite having been executed a number of years ago.

As it turns out, Clavería defaulted on his payments to Citibank, Díaz–Millet and to the EDB a little less that one year thereafter. The Citibank mortgage was not honored and on July 22, 1998, Citibank, as a secured creditor, filed a proof of claim against Clavería's bankruptcy estate. Clavería subsequently moved for dismissal of his bankruptcy petition, and the case was dismissed on November 5, 1999.

In January, 2000, the EDB filed a foreclosure and collection of money proceeding against Clavería to collect the amount due pursuant to its mortgage. The stipulation for the benefit of Citibank was not honored by the EDB when faced with the foreclosure proceedings against Clavería. The EDB did not notify Citibank of the foreclosure proceedings, alleging that since the Citibank mortgage was never recorded, it held no rank at the Registry. The EDB then entered into direct negotiations with Díaz–Millet to sell and cancel the promissory note and the mortgage (containing the subordination clause) without any notice to Citibank.

In the meantime, Citibank made a demand on Chicago Title under the terms of the insurance policy. On February 24, 1999, and again on March 11, 1999 counsel for Plaintiff at that time demanded from Seguí the amount of the claim. On March 1, 1999, Plaintiff Chicago Title Insurance paid Citibank the sum of $227,379.32 as payment in full of Citibank's claim under the title insurance policy. Citibank then assigned its rights under the promissory note and the mortgage to Plaintiff, and Plaintiff therefore became a successor in interest to the mortgage note held by Citibank.

When Díaz–Millet became aware of the foreclosure proceedings being brought by the EDB, they entered into direct negotiations with Clavería and the EDB in an attempt to recover their $185,000 guaranteed by the Paseo Alto property. As a result, Clavería gave Díaz–Millet the Paseo Alto property as payment in kind for the $185,000 loans, with Díaz–Millet's acceptance in writing of the EDB's mortgage lien over the property. By entering into the payment in kind transaction, Plaintiffs state that Díaz–Millet assumed Clavería's mortgage debt with The EDB (who according to Plaintiffs, still held the second rank mortgage in the Registry). Having done this, Plaintiffs allege that Díaz–Millet became the EDB's mortgage debtors and its obligors in relation to the stipulation contained in the EDB mortgage for the benefit of third party Citibank, who allegedly still had first rank in the registry. On January 31, 2001, the EDB's foreclosure and collection of monies action was voluntarily dismissed and closed, and its mortgage was withdrawn from the Registry of the Property.

Plaintiffs allege that Díaz–Millet had the duty, as obligors, to ensure compliance with the contract for the benefit of Citibank; that is, to notify Citibank of the negotiations to pay and cancel the EDB mortgage in order to allow Citibank to collect first, since it had the first lien on the property. Regarding the EDB, Plaintiff alleges that by entering into the payment in kind transaction, Díaz–Millet assumed Clavería's mortgage debt with the EDB and thus became the EDB's mortgage debtors and the obligors in relation

to the stipulation contained in the EDB mortgage for the benefit of third party Citibank. Regarding Samuel Seguí, they argue that per the notary law, he was responsible for effecting changes to any errors that the deed might have had, and therefore his failure to do so makes him liable to Plaintiffs, having left Citibank with an unsecured mortgage. Lastly, according to Plaintiff, the Puerto Notarial Bond Fund, being jointly and severally responsible for the notary's work and having a surety contract between them, is also liable.

The EDB and Díaz–Millet state that they had no duty to notify Plaintiff as to the foreclosure proceedings because the Citibank mortgage was never recorded; it therefore had no rank at the Registry of the Property. Defendant Seguí opposed Plaintiff's motion and has presented his own cross motion for summary judgment, stating that Plaintiff has failed to state a claim against him and that Plaintiff's complaint is time-barred. For the foregoing reasons, the Court hereby **DENIES** Defendants' EDB's and Díaz–Millet's motions to dismiss Plaintiff's claims against them; **DENIES** Co–Defendant Samuel Seguí Sotomayor's cross motion for summary judgment; and **DENIES** Plaintiff Chicago Title Insurance's motion for summary judgment.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. & Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; see also Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## III. FINDINGS OF FACT

1. On December 14, 1989, José Facundo Calafelt and his wife acquired a parcel of real property located in Urbanización Paseo Alto in the Cupey sector of Río Piedras, Puerto Rico, from Empresas Loyola, I.S. en C., S.E. for the amount of $350,000 ("the property").

2. On June 1, 1990, Calafelt subscribed a mortgage over the property to guarantee a promissory note in the amount of $300,000 payable to H.F., Inc. ("the mortgage").

3. The mortgage was insured by Plaintiff Chicago Title under a policy that guaranteed the H.F. Mortgage as to its priority (rank) and amount.

4. The H.F. Mortgage deed was subscribed before and by co-Defendant Seguí, who acted as a notary public.

5. Co–Defendant Samuel Seguí Sotomayor is an attorney at law and notary public duly licensed to practice in the Commonwealth of Puerto Rico.

6. At all times relevant to this action, Seguí was an employee of the Miguel García Suárez Law Firm, which at that time handled the bulk of the preparation and execution of mortgage deeds on behalf of H.F., Inc.

7. The García Suárez Law Firm's offices were housed in the same building as H.F.'s offices.

8. Attorney Seguí acted as a notary public in the preparation of the mortgage deed in question, Number 305 of June 1, 1990.

9. At the time when Deed No. 30 was prepared, the mortgaged property had not been presented for recordation or actually recorded at the Registry of Property because it was part of a new urban development—Paseo Alto—and was therefore a segregation of a larger parcel of land which had hereto not been segregated.

10. The legal description the property contained in deed 305 is consistent with the plot plan prepared for H.F., Inc. by Engineer Víctor F. Pagán on May 22, 1990, and which was provided by H.F., Inc. to the García Suárez law firm for the preparation of Deed 305.

11. The property was legally described in the mortgage as having an area of 1413.44 square meters.

12. The parties appearing in the deed, both the borrower and the lender, affirmed in the deed that the legal description was correct.

13. After it was signed, the mortgage deed was presented for recordation before the Registry of the Property of San Juan, Section IV, on June 7, 1990, by Sandra Mojer, an H.F. employee.

14. On May 22, 1992, H.F. Mortgage was notified that the deed in question contained an error as to the area of the real property.

15. The area of the real property according to the records of the Registry of Property was 1432.80 square meters, not 1413.44 meters as it appeared in the mortgage deed prepared by co-Defendant Seguí.

16. The notification sent was addressed and sent to co-Defendant Seguí by regular U.S. Mail to the address in Seguí's H.F. Mortgage notarial cover ("carátula notarial"), which was sent to the García Suárez Law Firm address at 1155 Roosevelt Avenue, which was also H.F. Inc.'s address.

17. Co–Defendant Seguí was no longer at the 1155 Roosevelt Avenue ad-

dress at that time, and since he had not notified the Registry of the Property of his new address, he therefore never personally received the error notice sent by the Registrar.

18. As provided by 30 P.R. Laws Ann. § 2255, the presentation entry ("Asiento de Presentación"), which determines the priority of the reservation made in the daily log of presentations kept by the Registry of Property, expires if a mistake is not corrected within sixty (60) days of the notice.

19. The presentation entry of the mortgage deed in question expired because the difference in area alleged in the notification was not corrected within the time allotted.

20. Between June 1 and June 12, 1990, H.F. sold the note in question and with it, the mortgage, to Citibank, N.A.

21. On June 21, 1996, Calafelt and his wife sold the property to Héctor Ernesto Clavería for the amount of $800,000.

22. Clavería contractually bound himself in the purchase to assume payment of "the corresponding payment of the mortgage existing in favor of Citibank."

23. On January 28, 1997, Clavería executed a mortgage over the same property in guarantee of a promissory note in favor of the EDB for the sum of $635,000.

24. The EDB mortgage was presented at the registry for recordation on February 10, 1997.

25. The EDB and Clavería both signed the EDB Mortgage to the effect that "(*l*)as partes expresamente postergan la presente hipoteca a la referida hipoteca a favor de Citibank, N.A., otorgada hace varios años hasta la suma de TRESCIENTOS MIL DOLARES ($300,-000)" on February 3, 2000. [Court translation: the parties expressly subordinate the present mortgage to the mortgage in favor of Citibank, N.A., subscribed several years ago, up to the sum of THREE HUNDRED THOUSAND DOLLARS ($300,000) ].

26. The EDB mortgage was therefore expressly subordinated to the insured mortgage up to the amount of $300,000.

27. Regarding the recordation of the Citibank mortgage, the EDB mortgage securing the promissory note executed between the EDB and Clavería specifically acknowledged that "For reasons unknown to the parties, said public deed has not yet been submitted to the Registry of the Property, despite having been executed several years ago."

28. All instruments refer to the EDB Mortgage as a secondary mortgage subordinate to the Citibank mortgage.

29. Two additional promissory notes encumbering the property were executed by Clavería, but in favor of Díaz–Millet: one for $125,000 and one for $60,000.

30. Diaz–Millet's deeds guaranteeing the two promissory notes were presented at the Registry of the Property at the end of February, 1997, and after the EDB deed had already been presented.

31. Díaz–Millet was not a party to the transaction between the EDB and Clavería.

32. On April 2, 1998, Clavería filed a petition under Chapter 11 of the Bankruptcy Code.

33. Through his bankruptcy petition, Clavería included Citibank as a secured creditor with a first lien over the Property and the EDB as holder of the second lien over the property.

34. Payment of the Citibank mortgage note was not honored and, on July 22, 1998, Citibank filed a Proof of Claim against the bankruptcy estate of Clavería as a secured creditor in the amount of $221,454.38, plus interest.

35. Through letter dated August 5, 1998, Citibank filed a claim to Chicago Title under its Policy.

36. A meeting between attorneys Charles P. Gilmore, Seguí and Miguel García Suárez, Seguí's former employer, occurred on February 24, 1999 regarding the allegations set forth in the Complaint.

37. On March 11, 1999, attorney Gilmore notified co-Defendant Seguí in writing regarding the incidents in case at bar in an attempt to reach an out-of-court settlement.

38. Said letter sent to Seguí included a letter that had been sent to attorney Miguel García, dated March 9, 1999.

39. By means of a letter dated August 31, 1998, Jorge Silva, on behalf of Citibank, stated that the Citibank mortgage was not recorded.

40. On March 1, 1999, Chicago Title paid Citibank, as demanded, the sum of $227,379.32 as payment in full under the insurance policy governing the mortgage.

41. Citibank thereupon transferred and assigned its rights under the promissory mortgage note and the Citibank mortgage to Plaintiff, Chicago Title, who became the holder of the note.

42. Clavería applied for a dismissal of his petition under Chapter 11 of the Bankruptcy Code, and on November 5, 1999, the U.S. Bankruptcy Court for the District of Puerto Rico ordered the case dismissed.

43. On January 26, 2000, the EDB filed a foreclosure and collection of monies proceeding against Clavería to collect monies due by Clavería under the EDB mortgage.

44. Clavería was properly served with the corresponding summons and complaint but did not appear to defend the EDB's claim, and default against him was entered.

45. On February 3, 2000, the EDB presented a cautionary notice ("Aviso de Pleito Pendiente" or "lis pendens") in the Registry of Property against the property.

46. On May 2, 2000, Díaz–Millet's counsel, attorney Héctor M. Lugo, negotiated with the EDB to help Clavería with the EDB mortgage and, in turn, purchase or assume said mortgage.

47. Attorney Lugo expressed concern that a promissory note was being executed in spite of the parties having acknowledged a debt or lien upon the property in favor of another (Citibank), without prior notice to that party.

48. On July 12, 2000, Clavería gave the property to Díaz–Millet as payment in kind of the two mortgage deeds due them for $125,000 and $60,000.

49. On August 14, 2000, the EDB executed a deed for cancellation of the EDB mortgage.

50. Neither Plaintiff nor Citibank were ever notified of the foreclosure proceedings brought by the EDB against the property in question insured by Plaintiff, nor about the negotiations between the EDB and Diaz–Millet.

51. The parties stipulate as to the contents of the two mortgage deeds executed by Clavería in favor of Díaz–Millet, as of time of execution of the mortgage.

## IV. CONCLUSIONS OF LAW

1. *The Economic Development Bank's Motion to Dismiss and Díaz–Millet's Motion to Dismiss*

The EDB and Díaz–Millet now move to dismiss Plaintiff's complaints against them, stating that they had no duty to notify Plaintiff of the foreclosure sale and no responsibility as to the Citibank mortgage, and that the EDB's subordination clause is invalid. The Court disagrees.

As is well known, according to Puerto Rico law, in order for a mortgage to be legally binding with respect to third parties, it must be duly registered. *See* P.R. Laws Ann. § 2001; *Asociación de Pescadores de Vieques, Inc. v. Santiago*, 747 F.Supp. 134, 136 (D.Puerto Rico 1990). In this case, while it is true that the mortgage was never recorded, three issues jump out to the Court.

First, that the EDB expressly acknowledged the existence of the Citibank mortgage, acknowledged that Citibank held first rank at the Registry, specifically agreed to its own subordination to the same, and reserved for that specific purpose the amount of Three Hundred Thousand Dollars ($300,000). Second, that the obligation assuming the mortgage in question was "passed down" as the property changed owners: Clavería assumed it in Deed No. 217, "Sale Assuming Mortgage Payment and Constitution of a Second Mortgage" (Plaintiff's Exhibit No. 8) specifically and purposely assumed its payment. This leaves at least one party, Clavería, who expressly undertook this obligation to pay the Citibank mortgage freely and of its own volition, and the debt itself expressly acknowledged by all parties in this case (with the exception of the Puerto Rico Notarial Bond Fund).

■ Lastly, as is well known, a mortgage is merely a guarantee of a debt, which in turn is secured by a particular property. It is axiomatic that the mortgage will exist so long as the debt remains unpaid. *Torres v. Fernández*, 47 P.R. Dec. 845, 848 (P.R.1934). In a mortgage relationship, however, it is important to distinguish between the actual debt and the mortgage.

Any given debt can give rise to a personal action for collection of monies which may eventually be executed upon personal or any other property of the debtor. These proceedings will be filed against the debtor and the prayer for relief is limited to money. The mortgage, on the other hand, is the guarantee which gives rise to a mortgage foreclosure suit to collect from the very property that secured the debt. The defendant in the proceedings may or may not be the debtor. Instead, the execution will be carried out against the registered owner of the mortgaged property and the property will be foreclosed to collect from the proceeds of the public auction.

■ Under Puerto Rico law, a mortgage creditor may bring three types of suits to collect a debt; to wit, summary foreclosure proceedings, civil foreclosure proceedings and an ordinary suit for collection of monies. *CRUV v. Torres–Pérez*, 111 P.R. Dec. 698, 699–700 (P.R.1981); *see*

also *Zaragoza v. Santiago,* 51 P.R. Dec. 532, 535 (P.R.1937); 30 P.R. Laws Ann. § 2701. A mortgage creditor is not required to foreclose on a mortgage note if he does not wish to. He may disregard this guarantee and demand payment by way of a personal suit against the debtor and attach goods other than the mortgaged property to execute judgment. *Zaragoza,* 51 P.R. Dec. at 535; *Torres,* 47 P.R. Dec. at 848. Therefore, and as applied to the case at bar, even if the mortgage in question was not recorded for purposes of acquiring collateral for execution purposes, the personal obligation to repay the loan still stands. This would be due by the present owner of the property if he assumed payment or if he bought subject to payment.

■ Having said this, and finding that there is an outstanding obligation which has not been paid, the Court finds that there are genuine issues of fact as to whether notice to Citibank was necessary in light of the non-recordation of the mortgage; the ensuing and existing obligation for repayment of the loan; the fact that the EDB expressly assumed its mortgage in second rank to that of Citibank and its obligations thereunder; whether by entering into the payment in kind transaction, Díaz–Millet did in fact assume Clavería's mortgage debt with the EDB and therefore became Plaintiff's mortgage debtors and the obligors; and whether Diaz–Millet is a third party protected by the registry in the matter of the subordination clause. The summary judgment standard being a higher standard to overcome than that of a motion to dismiss, the EDB and Diaz–Millet's arguments in favor of dismissal are therefore **DENIED**.

The Court therefore **DENIES** co-Defendants the EDB and Díaz Millet's motions to dismiss Plaintiff's claims against them (**docket Nos. 173, 185, 236, 238**) and also

**DENIES** Plaintiff's motion for summary judgment as to the claims against the EDB and Díaz Millet. Because Plaintiff's cause of action against Clavería is based on the same theory, the Court also holds that Plaintiff's claims against Co–Defendant Clavería remain before the Court.

2. *Plaintiff's Motion for Summary Judgment as to Claims Against Samuel Seguí Sotomayor and Seguí's cross motion for Summary Judgment*

a. *Time bar*

Plaintiff now moves for summary judgment as to the claims against Seguí, the notary who prepared the deed describing the property at issue. Seguí opposes the motion and has filed a cross-motion for summary judgment, alleging that he is not responsible for the error in the deed, and further, that Plaintiff's the claims are time-barred. The Court disagrees.

The Supreme Court of Puerto Rico has held that a notary's civil liability lies in tort. Therefore, the Court will first discuss the statute of limitations issue, since it could be dispositive of the claims at issue.

■ The statute of limitations that applies to a case of notarial malpractice is generally the one-year period established in Article 1868, 31 P.R. Laws. Ann. § 5298, of the Puerto Rico Civil Code. The applicable statute of limitations lies in tort and is one year of duration. In *Chévere v. Catalá,* 115 P.R. Dec. 432 (P.R.1984), the Puerto Rico Supreme Court adopted the opinions of commentator E. Giménez Arnau, finding that the liability of a notary lies in tort law when the actions at issue have been limited to the sphere of the duties of the notary's position. *See Chévere* 115 P.R. Dec. at 441–442. The Supreme Court of Puerto Rico held that the civil liability

of a notary who failed to adequately set forth the liens and encumbrances of a property properly fell in tort law. In the instant case, the Court finds that Seguí's acts fell squarely within the sphere of his duties as a notary. Accordingly, the statute of limitations that applies is the one-year statute of limitations applicable to routine tort claims.

In this case, Co–Defendant Seguí states that the statute of limitations began to run on June 2, 1990, the day after the mortgage deed was executed before him and the mistake in the plot area was made. Plaintiff disagrees with Co–Defendant Seguí's assessment of the date when the statute of limitations began to accrue. According to Plaintiff, there was no injury on June 2, 1990, the day after the deed was executed before Seguí, because the deed had not been presented at the Registry. Second, Plaintiff states that Seguí has not provided evidence showing that, on June 2, 1990, Plaintiff knew that an injury had occurred. The Court agrees with Plaintiff on both counts.

The Court finds it is impossible for the injury to have occurred on June 2, 1990, the day after the deed was executed before co-Defendant Seguí, because the deed had not been presented at the Registry—or for that matter, refused to be recorded—due to an error. Clearly, no notice of injury was apparent at that time. Seguí's argument is therefore inapposite.

■ Co–Defendant Seguí, however, presents an alternate accrual date of January 28, 1997. Plaintiff admits that it knew of the injury at that time, but did not know that Co–Defendant Seguí had caused the damages at issue. According to Plaintiff, the date of injury was September 3, 1998, when it learned of both the injury and the person responsible for the injury.

According to Puerto Rico law, the one year statute of limitations runs "when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor." *Tokyo Marine & Fire Ins. Co., Ltd. v. Perez & Cia., De Puerto Rico, Inc.,* 142 F.3d 1, 3 (1st Cir.1998) (*quoting Colón Prieto v. Geigel,* 115 P.R. Dec. 232, 243, 1984 WL 270950 (1984)). Citibank admits that it did not learn of the injury until July, 1998, eight years after the error was allegedly committed and the unrecorded deed had been lying in wait. Although Citibank knew of the injury at that point, it did not know the identity of the tortfeasor. And as stated above, it is not until the party has reason to know the tortfeasor's likely identity that the statute of limitations begins to run. *Rabassa–Suárez v. Ford Motor Co.,* 204 F.Supp.2d 302 (D.Puerto Rico 2002).

The Court finds that it was not until Eusebio Dardet from San Juan Abstract notified Plaintiff on September 3, 1998, via a letter explaining therein the reason why the mortgage was not recorded that Plaintiff became cognizant of the tortfeasor's identity. The Court therefore finds that the statute of limitations in this case began to run on September 3, 1998.

■ Plaintiff has also brought forth admissible evidence indicating that it made the required extrajudicial claims which tolled the statute of limitations. The Court agrees. As is well known, a claim can be tolled by the filing of a compliant in court, by an extrajudicial claim made by the creditor, or by any other act of acknowledgment by the debtor. 31 P.R. Laws Ann. § 5303. In the case at bar, counsel for Plaintiff in 1999, attorney Charles P. Gilmore, met with co-Defendant Seguí and Seguí's previous employer, attorney Miguel García, on February 24, 1999 regarding the claims set forth in the Complaint. On March 11, 1999, Attorney Gilmore formally notified co-Defendant Se-

guí in writing regarding the case at bar to discuss an out-of-court settlement, which included a letter that had been sent to Seguí's former employer, attorney Miguel García Suárez, dated March 9, 1999, with all the relevant facts of the case. The Court finds that these notices were clearly extrajudicial claims which served to toll the statute of limitations period. The Complaint was filed on September 2, 1999. Accordingly, Plaintiff's action against Notary Seguí is not time-barred and the Court therefore **DENIES** Seguí's motion on this claim.

### b. *Notarial Liability*

According to Seguí's deposition, he worked at the García Suárez firm at the time the deed was presented on June 7, 1990. The deed included his address as the García Suárez firm at 1155 Avenida Roosevelt. However, Seguí left the firm in 1991. When the Registry of the Property notified Seguí of the error, they sent the notice to the address on Avenida Roosevelt on May 22, 1992. Seguí stated that the García Suárez firm has notified him of the receipt of mail addressed to him in the past, and this has included notifications of errors from the Registry of the Property. He stated in his deposition, however, that he does not believe the García Suárez firm is responsible for not notifying him. He stated that it was customary for the firm to notify him immediately of notifications of errors. Seguí further states that he did not notify the Registry of the Property as to his new address, because as he has acted as a notary in around one thousand two hundred mortgage deeds, and it would therefore be extremely difficult for him to notify as to each deed. According to Plaintiff, Seguí is liable for the damages sustained by Plaintiff based on his failure to correct the error.

Puerto Rico Law, 30 P.R. Laws Ann. § 2266, states:

"The notary or official who, by mistake, causes an omission which impedes the registration of a transaction or contract in accordance with the provisions of this subtitle shall immediately make the correction upon demand, issuing a new document at his own expense, if possible, and compensating the interested parties for the damages cause by his mistake, in every case." 30 P.R. Laws Ann. § 2266.

Puerto Rico laws describe the notification requirement as follows:

"If the Registrar finds a defect in the document . . . he shall notify the presenter and the authorizing notary of his judgment in writing if it is so requested in the entry, within 60 days from the date of said presentation entry, either by personal delivery or by mail, so that they may correct the defect within a period of 60 days from the date of notice." 30 P.R. Laws Ann. § 2272.

The deed was presented on June 7, 1990 and Seguí was sent written notification on May 22, 1992.

Seguí alleges that he is not liable because the notice sent by the Registrar was not concerning an "error", but rather a "discrepancy". He further avers that this could have been due to an error in the Registry's books and not on his behalf, that Plaintiff has failed to establish that the area set forth in the deed was a mistake, and that the deed in question must therefore be presumed to be correct. The Court finds all of these arguments to be meritless.

■ Regarding the first issue, error v. discrepancy, the Court finds that this is a distinction without a difference. Although the Code uses the word "mistake", the Court finds this is not dispositive of the issue, as it is the end effect which is the

dispositive issue: that the notary's actions cause *an omission which impedes the registration of a transaction or contract,* just like in the case at bar. Therefore, whether it was a mistake or an error is of no difference if the notary's actions prevented the Registrar from recording the deed. The Code further alludes to a "defect" in the document in the notification section, further disproving co-Defendant Seguí's strict, literal reading of the clause in question.

Regarding the second issue, that of who committed the error and that the deed in question must be presumed to be correct, co-Defendant Seguí misconstrues the issue in question. While Seguí may have a valid point—that the Registrar's office might have made a mistake in the examination of the documents (known as "calificación")—the issue in this case is that *a notification of a defect was sent to Seguí, in his capacity as the notary for the deed in question, for correction and the defect was not corrected.* In other words, whether the Registrar committed an error is not at issue here, but rather that a notice was sent and was not corrected within the time allotted by the law. If co-Defendant Seguí understands that the Registrar is at fault, then the proper course would have been to instill a claim or a complaint against the Registrar. Co–Defendant Seguí's argument that the deed must be presumed correct is inapposite to this claim and is therefore **DENIED**.

 Regarding Seguí's duty as a notary, the Court finds that a notary's duty is indeed personal and non-delegable. The Puerto Rico Supreme Court has stated that ... "the notary ... must also guarantee the certainty of the contents [of the instrument] thereof, their legal value ..." *Chévere,* 15 P.R. Offic. Trans. at 578 (n. 2). Furthermore, the notary's duty ... "does not stem from an obligation of the notary towards his client through a legal contract, nor from deontology", but is rather an official duty "in the interest of third persons ..." *Id.* at 580. "A notary's functions transcends the external act of legalizing signatures. It presupposes the creation of a level of understanding and communication between the notary and the subscribers that permits [the subscribers] to form a rational conscience of the act they are undertaking." *In re Angel L. Delgado,* 120 P.R. Dec. 518 (P.R.1988) (Court translation). A notary further serves as an impartial observer and guarantor of the authenticity of the legal facts that he or she certifies. *RB Town & Country Realty, Inc., v. TLC Beatrice Int'l. Holdings,* 966 F.Supp. 131 (D.Puerto Rico 1997).

 On the facts as they stand, the Court cannot dismiss Seguí from this case. The Court finds co-Defendant Seguí had a duty as a notary to guarantee the authenticity of the legal facts that he certified in the deed in question, and finding that the deed was returned and that the presentation entry expired due to a defect automatically serves to activate the statute in question—that a mistake was committed, as evidence by the fact that the mortgage deed was never recorded. Summary dismissal is therefore unwarranted on the issue of liability.

 Regarding the remaining issues, mainly who at H.F. received the notice sent by the Registrar of the Property, whether Seguí did in fact know about it and was demanded to correct the same, and whether, *on these facts,* Seguí should be liable for the defect in the deed, the Court finds there are genuine issues of material fact that prevent it from granting summary judgment, issues of fact which are only proper for a jury to decide. The Court therefore **DENIES** all motions requesting summary dismissal on those grounds.

c. *The Puerto Rico Notarial Bond Fund*

Under the law, every practicing notary in Puerto Rico must post a bond in an amount not less that Fifteen Thousand Dollars ($15,000.00) to answer for the proper performance of the functions of his office and any damages that might have been caused by his acts or omissions on the exercise of his duties. 4 P.R. Laws Ann. § 2011. As the Fund is liable for acts or omissions of all notaries, and as Seguí, a practicing notary in Puerto Rico, posted such a bond, the Fund is a proper party in this case.

Therefore, as the Court holds that Plaintiff's claims against co-Defendant Seguí are not time-barred, and that there are genuine issues of material fact regarding the notice sent, who received and whether there was a duty to correct under the facts as they stand, the Court DENIES Plaintiff's and co-Defendant Seguí's respective motion and cross motion for summary judgment on those issues. For the same reasons, the Court DENIES the Puerto Rico Notarial Bond Fund's relief for dismissal.

## IV. CONCLUSION

For the reasons discussed above, the Court DENIES Defendants' Economic Development Bank and Díaz Millet's motions to dismiss Plaintiff's claims against them (**docket Nos. 173, 185, 199, 236, 238**); **DENIES** Co–Defendant Samuel Seguí Sotomayor's cross motion for summary judgment (**docket No. 249**); and **DENIES** Plaintiff Chicago Title Insurance's motion for summary judgment (**docket No. 207**).

**IT IS SO ORDERED.**