OPINION OF THE COURT
John R. LaCava, J.
Petitioner brings this Election Law article 16 proceeding and declaratory judgment action (collectively referred to as the proceeding) seeking, inter alia, an order invalidating the Qpportunity-to-Ballot (O-T-B) petitions for write-in designation for the Independence Party (Party), by respondent Committee to Receive Notices (Committee), and restraining respondents Westchester County Board of Elections (Board) from designating a write-in candidate for access to the September 13, 2011 ballot as the candidate for the Independence Party primary dated September 13, 2011, for the position of Westchester County Legislator, 2nd Legislative District. The proceeding was commenced by an order to show cause, dated August 3, 2011, contesting the filed O-T-B petitions.
Petitioner alleges, inter alia, that pursuant to Election Law § 6-132 (3), where the petition is circulated by a non-Party member, a notary must be present and attest that the petition signer came before him; the notary must also attest that he administered an oath to the signer and that the petition signer swore to the truth of his statements in signing the petition; that these formalities were not followed with regard to many of the O-T-B petitions circulated herein; and that, therefore, the O-T-B petitions were invalid. Respondent Committee argues that one notary, being disabled, nevertheless was present a short distance away when petition signers were advised by the petition carrier that they were being asked to sign a candidate’s O-T-B petition, and when they were asked if their answers were truthful; it also asserts that signatures gathered by a petition carrier and an attorney-notary were also properly sworn to by the petition gatherers.
The Hearing
On August 9, 2011, a hearing was conducted to determine the validity of the signatures and other information contained on sheets No. 9 (5 signatures), No. 10 (5 signatures), No. 11 (13 signatures), No. 14 (5 signatures), No. 15 (6 signatures), and No. 16 (5 signatures), and more particularly whether those signatures were properly notarized by Dean Steven Travalino. The hearing also encompassed a determination as to the valid *319 ity of the notarization by John Anthony Pappalardo with regard to Sheets No. 1 (5 signatures) and No. 12 (2 signatures).
Based upon the credible evidence adduced at the hearing, the court makes the following findings of fact:
Mr. Travalino and Mr. Pappalardo both testified that they had not formally placed any one of the combined 49 signers of the petition sheets that they had notarized under oath. Nor did either of the notaries ask any of the signers to swear that the information provided was true. Both notaries had read and were familiar with the statement, immediately preceding their signature line, contained in the “2. Notary Public or Commissioner of Deeds” section of the petition sheet, to wit,
“On the dates above indicated before me personally came each of the voters whose signatures appear on this petition sheet containing (fill in number)— signatures, who signed in my presence and who, being by me duly sworn, each for himself or herself, said that the foregoing statement made and subscribed by him or her, was true.”
With regard to Mr. Travalino’s sheets, the combined testimony by Charles Duffy and Mr. Travalino revealed a methodology employed by them which, it was argued, amounted to, or equated to, a proper “notarization” of the signatures contained on each of the sheets. Mr. Travalino testified that he is a “C 6/7 quadriplegic” who is basically paralyzed from the neck down, who has limited use of his arms, but no use of his fingers. Despite the latter affliction, he testified that he was able to sign each of his petition pages. He has excellent hearing and speaks and communicates without any problem. He is an attorney who formerly was involved in real estate law, but no longer practices.
Mr. Duffy is the Supervisor of the Town of Lewisboro and was assisting with the collection of signatures for another candidate, Peter Michaelis. Since Duffy was not an enrolled member of the Independence Party, he needed a notary for the petition sheets, and Mr Travalino assisted in this capacity for a period of approximately three days. The men got into one of Mr. Travalino’s cars and variously proceeded to the homes of registered Independence Party members. The car was parked near each of the homes, “between 8-25 feet” from the front doors, porches, carports, etc. of the homes. Mr. Travalino would remain in the car, with a window(s) open and a good sight line to where Mr. Duffy would meet with and talk to the voters. Mr. Duffy would *320 explain why he was asking for the voter’s signature on the petition. After the voters agreed to sign one of the pages, he would tell most, if not all of them, that Mr. Travalino was in the car, that he was disabled, but nevertheless was a notary public, and that he was there to witness them sign. Mr. Travalino could hear all of this, and felt that each signatory was “sworn” by Mr. Duffy in his presence since each person was either personally known, or properly identified as the voter living at that residence, the purpose of the petition was fully explained to the voter, and the voter affirmatively indicated his or her understanding of the reason for signing the petition, and that he was a notary, was close by, and was there to witness their signature on the petition sheet. Some people actually came up to the car to say hello to Mr. Travalino, but, in each case, this occurred after they had been “sworn” by Mr. Duffy. As previously indicated, Mr. Travalino, although he was fully able to do so despite his disability, did not have any of the signers who came to the car show identification, raise his or her hand and swear to their identity or to the truth of the information contained on the signature line.
Mr. Pappalardo, who is an attorney, with the exception of the first signer on sheet No. 1 who is his wife, carried the two previously indicated petition sheets to the homes of the other six registered members of the Independence Party. He thoroughly explained the reason for the petition process and why he was asking them to sign each sheet. He was satisfied that each person was properly identified and that he or she understood the petition process, who they were signing for, and the office for which that person was running for. As previously indicated, he did not swear them in, or ask them to swear that the information provided was true.
Were the Signatures Properly Taken under Oath by a Notary?
Petitioner argues, and respondent Committee does not contest, that pursuant to Election Law § 6-132 (3), where a designating petition is circulated by a person who is not a duly enrolled member of the party for which the petition is being carried, a notary public or commissioner of deeds must be present to attest that the petition signer came before him, that the signer was sworn, and that the signer swore specifically to the truth of the statements made in signing the petition. Election Law § 6-132 (3) provides:
*321 “In lieu of the signed statement of a witness who is a duly qualified voter of the state qualified to sign the petition, the following statement signed by a notary public or commissioner of deeds shall be accepted:
“On the dates above indicated before me personally came each of the voters whose signatures appear on this petition sheet containing ............. (fill in number) signatures, who signed same in my presence and who, being by me duly sworn, each for himself or herself, said that the foregoing statement made and subscribed by him or her, was true.”
Petitioner further argues that the petition signers, in the case of all of the Travalino petitions, never properly came into Travalino’s presence; and in the case of both the Travalino and Pappalardo petitions, that the signers were never duly sworn by either notary, nor did they state to either notary that the statements they had made were true.
The delegation of notarial tasks by a notary public to an assistant or third person is impermissible under longstanding case law (Sheldon v Benham, 4 Hill 129 [Sup Ct 1843]; Onondaga County Bank v Bates, 3 Hill 53 [Sup Ct 1842]; see also Chicago Tit. Ins. Co. v Sotomayor, 394 F Supp 2d 452 [D PR 2005]). The notion that establishing the mere act of understanding what a petition is addressing in the mind of the petition signer, all done within sight and hearing distance of a notary, is somehow equivalent to the solemnity of attesting to statements under oath, is unpersuasive. To adopt such an argument would render meaningless the requirements of the statute and the explicit language of the petitions.
Nor is there any compelling reason to fashion an exception due to Mr. Travalino’s disability. Mr. Travalino could easily have fulfilled all of his required notarial duties, by simply having Mr. Duffy ask the individual petition signers to walk a short distance and approach the automobile in which he was sitting. There is no evidence in the record that any of the signers were asked to go over to Mr. Travalino to be sworn. Had that been done, Mr. Travalino could then have properly sworn each and every one of the signers, and asked them if what they had stated by signing was true. The court finds unpersuasive respondents’ attempt to invoke the protection of the Americans with Disabilities Act— post-trial, and without any evidence on the subject having been introduced into the record. Additionally, the court, based upon *322 the evidence adduced at the hearing, declines to find that the simple requirements of Election Law § 6-132 (3) that a notary public be actually present when a signature is taken, that he actually swear the signer, and that he require the signer to swear to the truth of the statements made in signing the petition, impede the rights of disabled persons under that Act.
With respect to the two petitions circulated by Mr. Pappalardo, he candidly admitted in his testimony that he did not even mention the word “swear” at all, and said that he took no steps to swear any of the seven signers whose signatures he collected.
It has frequently been held that failure to adhere to the oath requirements of the Election Law with respect to the signing of petitions is fatal to such petitions (Matter of Imre v Johnson, 54 AD3d 427 [2d Dept 2008]; see also Matter of Gravagna v Board of Elections of City of N.Y., 22 AD3d 776 [2d Dept 2005] [signatures collected by notary public invalid due to his failure to administer an oath]; Matter of Zunno v Fein, 175 AD2d 935 [2d Dept 1991] [signatures witnessed by notaries public, who had not taken the oaths of the signators, nor obtained any statements from them as to the truth of the statements to which they subscribed their names, were invalid]).
In the absence of strict compliance with Election Law § 6-132 with regard to the taking of signatures on petitions, by the notary being in the presence of the signers, by having the signers placed under oath, and by requiring the signers to affirm to the truth of the statements made in signing, such signatures must be found by the court to be invalid. The invalidation of the signatures appearing on petitions witnessed by Mr. Travalino and Mr. Pappalardo renders the petitions invalid for failing to obtain the required number of signatures.
Based on the foregoing, it is hereby ordered, that the Election Law article 16 proceeding and declaratory judgment action seeking to invalidate the Opportunity-to-Ballot petitions for write-in designation for the Independence Party, by respondent Committee to Receive Notices, designating a write-in candidate for access to the September 13, 2011 ballot as the candidate for the Independence Party primary dated September 13, 2011, for the position of Westchester County Legislator, 2nd Legislative District, is hereby granted; and it is further ordered, that the Westchester County Board of Elections is hereby enjoined, restrained, and prohibited from executing or allowing the name of a write-in candidate access to either the September 13, 2011 *323 Independence Party primary election or the November 8, 2011 general election, or executing or allowing the name of a write-in candidate to be printed or placed on the official ballots to be used either at the September 13, 2011 Independence Party primary election or the November 8, 2011 general election, for public office of Westchester County Legislator, 2nd Legislative District.